Savage, Ch. I.
The principal questions arising in this case are
1. Whether the admissions of one partner, after the dissolution of the partnership, are evidence against the other late partner;
2. When one partner retires, leaving a balance due a third person, and the remaining partner continues to make payments to such third person, enough to discharge the balance against the late firm, but without any specific appropriation by any one, the payments being made and received on account generally, whether such payments do not discharge the balance against the firm.
*453 I shall state only such facts as appear necessary to raise these questions.
On the 16th of August, 1817, the respondent and one of the defendants below, Kauffman, purchased the brig William Hemy, and the respondent went in her as master on a voyage to Havre. After the departure of the brig, and before her return, the defendants below, Kauffman and Baker, entered into partnership in mercantile business. ■ In January, 1818, the brig made her second voyage to Havre; and her earnings were invested in certain articles for the defendants below. The earnings of the brig, in this way, came into their hands, though Baker, the appellant, seems to have had no permanent interest in the brig herself.
In June, 1818, a proposition was made to the defendant, Kauffman, by the agent of Opperman, Mandrott & Co. of Havre, to purchase a quantity of cotton at Savannah, and send it by the brig to Havre, consigned to Opperman, Mandrott & Co. Kauffman proposed to the respondent to be interested in the cotton, which was assented to; but the extent of that interest is disputed; the defendants below contending that the respondent was half owner of 129 bales, one ihird of the cargo, and the respondent contending that his interest was only the amount of funds which he then had in *the hands of the defendants below, a little rising 1300 dollars. On this speculation, there was a loss eventually, as Kauffman says, of 5,200 dollars and upwards. Of course, if the respondent was owner of one half, his loss must have been 2,600 dollars, double the amount which he claims to have been invested. If his investment was but 1,341 dollars, as computed by the master, then, by the same calculation, there were proceeds of the cotton in the hands of the defendants below amounting to 791 dollars.
In January or February, 1819, Kauffman and Baker dissolved their partnership; Baker retiring with a gross sum, and Kauffman carrying on the business, with authority from Baker to liquidate and settle all unsettled concerns of the company.
In the same month of February, 1819, the respondent went in the brig to Limerick, and brought home passen *454 gets. He recieved the freight out and the passage money back, amounting, by the master’s report, to 3,086 dollars and 35 cents, the one half of which belonged to him, and the other half, 1,543 dollars and 17 cents, is credited by the master to Kauffman. When this voyage commenced, according to the master’s calculation, Kauffman owed the respondent, on account of the third voyage to Havre, 1,256 dollars and 20 cents, of which 828 dollars and 5 cents were the proceeds of the cotton and interest. But in consequence of the other charges against Kauffman growing out of the Limerick voyage, when the respondent received the sum of 3,086 dollars and 35 cents, after crediting one half to Kauffman, he was still debtor to the respondent about 140 dollars.
The principal controversy between the respondent and Kauffman, grows out of the subsequent transactions in relation to the brig; but as Baker was in no wise connected with those transactions, and as he alone appeals, I shall not pursue them farther.
The cause having been put at issue, a reference was made to a master, to take and state an account between the parties.
On the hearing before the master much testimony was taken ; but I find nothing to prove the extent of the respondent’s interest in the cotton. From the testimony of Brown and Bokee, it appears to have been the subject of dispute between the respondent and Baker. The latter does not admit the claim of the former ; but insists that his (the respondent’s) interest was one half. It is evident from the report, that the master did not rely on the testimony to ascertain the fact. He says, “that it has been admitted before me on the part of the said defendant, (Kauffman,) that the interest of the complainant in a certain parcel of cotton, shipped from Savannah on board the said brig William Henry on her third voyage to Havre, was to the amount of his funds then in the hands of the defendants.” This fact had-been averred by the respondent in his bill: it was denied by both the defendants below, in their answer ; and was, therefore, a fact to be proved
*455 The admission of Kauffman was, no doubt conclusive, as to him; but did it prove the fact as against Baker? Kauffman and Baker were partners when the purchase was made of 129 bales of cotton; and also when the cotton was sold. It seems they were jointly interested in the cotton; but the partnership ended in February, 1829 ; and the admission was made by Kauffman in 1823. From the manner in which the case was considered by the master, it did not become necessary for him to discuss or decide upon the admissibility of such evidence as against Baker. His conclusion was, that no partnership existed at any time between the respondent and Baker; but if a partnership did exist, it could bind Baker only for responsibilities incurred prior to the dissolution, and that by the receipt of the freight and passage money on the voyage to Limerick, the sum then due to the respondent on account of former voyages, was discharged: and further, that Baker was not answerable for the proceeds of the cotton, they having been received by Kauffman after the dissolution of his partnership with Baker.
The respondent excepted, because the proceeds of the cotton were charged to Kauffman alone, when they should have been charged to the defendants jointly. The exception was allowed by the chancellor, who decreed that Kauffman and Baker should pay to the respondent 1124 dollars and 4 *cents, the proceeds of the cotton and interest ; and that Kauffman alone should pay 1056 dollars and 75 cents, with costs against both defendants!
1. Were the admissions of one partner, after the dissolution, proof against the other partner as to the extent of the respondent’s interest in the cotton adventure ? On this question a different rule prevails in the courts of this state from the one which seems to be established in England. There the rule is, that an admission made by one of two partners after the dissolution of the partnership, concerning joint contracts that took place during the partnership, is competent evidence to charge the other partner. In the case of Wood v. Braddick, (1 Taunt. 104,) a letter of one defendant, a former partner was produced, written after the *456 dissolution of the partnership, acknowledging' a balance due the plaintiff; and it was held conclusive against the other partner; Mansfield, chief justice, says, clearly the admission of óne partnér, made after the partnership has ceased, is not evidence to charge the other in any transaction which has occurred Since their separation; but the power of partners with respect- to rights created pending the partnership, remains after the dissolution. The same rule prevails in South Carolina. (2 Bay. 533.)
In the same year with Wood w. Braddick in the common pleas in England, the case of Hackley v. Patrick, 3 John. 536,) was decided by the supreme court of this state. In that case a partnership had existed betWeéh Patrick & Heriry Hastie, the latter of whom, on the dissolution, was authorized to settle the unsettled business of the firm. Two or three years after the dissolution, he acknowledged a balance due the plaintiff. Upon this admission the plaintiff sought tó recover against Patrick; On the argument, the court stopped the ¿btinsel in fbply; and said this is a clear case. After a dissolution of a copartnership, the power bf one partner to bind the others wholly ceases; [1] There is rib reason why his acknowledgment of an account should bind his cd-partnersj any more than his giving a promissory note in the name of the firm, or any other act. Ten years afterwards; the point was again raised before the same court; *in Walden v. Sherburne, (15 John. 424.) In that case Wood v. Braddick was cited, and presented to the court as containing the true principle; but Spencer, justice, in giving the opinion of the court, sáys, “ According to the decision of this court in Hackley v. Patrick, (3 John. 536,) one partner cannot, after a dissolution; bind his copartner by acknowledging an account, any more than he can give a promissory note to bind him. It seems that the court of common pleas in England have held otherwise ; (1 Taunt. 104;) but I believe there is more safety in the rule of this court than in a contrary One. For about twenty years the rulé has been considered Settled as laid down in Hackley v. *457 Patrick; and has been very recently recognized by the supreme court. (Hopkins v. Banks, 7 Cowen, 650.) I would not, therefore, unsettle it, even if I thought the English rule the' more correct.
A distinction was attempted, upon the argument, between the admission of an account and the admission of a fact; but I can perceive none in principle. The same consequence follows. The admission of the fact determines the amount of liability which attaches to the other partner, with as much certainty as if Kauffman had admitted the amount of the proceeds of the cotton in the hands of the firm.
If, therefore, the court below erred, as I think it did, in considering the fact proved as against Baker by the admission of Kauffman, it follows that the case must be sent back to that court, with instructions to refer it again to the master, unless upon the other point in the case such reference becomes unnecessary.
2. I proceed, therefore, to inquire, whether the respondent’s claim for the proceeds of the cotton, was extinguished by the moneys received at Limerick.
In discussing this point, I must necessarily consider the evidence sufficient to charge Baker with the proceeds of the cotton, though I have endeavored to show that that fact has not been proved by competent testimony, so far as regards Baker.
*For the purpose of the argument, then, I am to consider the proceeds of the cotton* 828 dollars and five cents, in the hands of Kauffman and Baker, before the commencement of the voyage to Limerick. At Limerick the respondent received money of the defendant Kauffman, amounting to 1,557 dollars and 60 cents. Nothing was done at the time which amounted to an appropriation .of the money to any particular demand. The respondent had in fact a demand for the cotton, and no other, except disbursements by him, on account of that voyage.
There is no doubt but a person indebted to the same creditor on different accounts or demands, making a pay *458 ment, may apply the payment to any demand he pleases ; and if the debtor fails to make the application, or rather appropriation, the creditor may make such appropriation as he pleases. [1] But if no appropriation is made by either, but the money is paid and received generally on account, how does the law make the appropriation ? In Goddard v. Cox, (2 Str. 1194,) it was decided that in such case the creditor has the right of applying when there is no dispute about liability; but if the debtor is liable in one demand personally, and in another as executor which depended upon the question of assets, then the creditor cannot make the application to such demand. The case of Devaynes v. Noble, Clayton’s case, (1 Mer. 584 to 610,) gave rise to much discussion as to the rules governing the application of indefinite payment. Sir William Grant, master of the rolls, examined the subject at some length; but his decision did not rest upon it, as he distinguished the case before him from all the cases which had been cited. He considered the rule of the civil law to be, that the election, whether by debtor or creditor, should be made at the time of payment; and if neither applied the payment when made, then the law made the payment upon certain rules of presumption ; and in applying presumption, the presumable intention of the debtor was first considered. The master of the rolls considered the case of Goddard v, Cox, (2 Str. 1194,) and the cases of Wilkinson v. Sterne, (9 Mod. 427,) Newmarch v. Clay, (14 *East, 239,) and Peters v. Anderson, (5 Taunt. 506,) as establishing this proposition : that in the absence of any express appropriation, it is the presumed intention of the creditor which is to govern; and he may, at any time, elect how payments made shall retrospectively receive their application. While he admits the rule thus established by those cases, he considers it an extension of the original rule. Meggot v. Mills, (Ld. Raym. 287,) and Dawe v. Holdsworth, (Peake’s N. P. Cas. 64) *459 were decided apparently upon the originalrule ofthe civil law; but they are said by Chief Justice Gibbs to be distinguishable on- the ground that the defendant would have been liable to be declared a bankrupt, unless the payment had been appropriated to the prior debt. Clayton’s case was decided on the ground of* there being no distinct demands in his favor against the banking house; but one continued running account; and in that case the drafts were held to apply to the oldest deposits. But this case is distinguishable from that. Here the respondent had distinct demands against different individuals; and when a payment was received by him, or moneys of Kauffman came into his hands, he might have good reason for applying such money to a recent indebtedness of Kauffman- alone, and retaining his claim upon the firm for what was due upon the cotton adventure. It will be seen, however, that the moneys received at Limerick were sufficient to discharge his individual claims upon Kauffman, and the joint claim upon Kauffman and Baker also, except $140. No case has been cited, and I presume none can be found, carrying the creditor’s right so far as to retain money in his hands to apply t upon any future indebtedness, leaving a prior demand unpaid. The moneys received by the respondent, therefore, should he applied to pay, as far as they went, all the claims he had, giving him the election in the appropriation. According to this rule, if we consider the liability of Baker established by the admission of *Kauffman, still the decree against both defendants is for too much.[1]
= Whether, therefore, Baker is liable or not, the decree of his honor, the chancellor, should be reversed, and the cause sent back to the master for further proof.
Woodworth, J. and the whole court concurred in this opinion, except
*460 Sutherland, J., who not having heard the argument, gave no opinion.
Ordered, adjudged and decreed, “ that the decree of his honor, the chancellor, appealed from in- this cause, be revérsedarid that the record- and proceedings be remitted, &c.

 National Bank v. Norton, 1 Hill 572. Bristan v. Boyd, 4 Paige 17; Vari Kuren v. Parmelee, 2 Comst. 532. See Ante, Gleason v. Clark, 59 n. 1.

 Bank Niagara v. Rosevelt, ante, 411, n. 2. U. S. v. Wardwell, 5 Mason, 82. Hillyer v. Vaughn, 1 J. J. Marsh, 583. Hanmer’s adm’rs. v. Rochester, 2 id. 145. Burke’s adm’rs v. Albert, 4 id. 97. Bacon v. Brown, 1 Bibb, 324, Post 746, 773-777. See also, 5 Denio 470, 3 Denio 248; 15 Wen. 23 Am. Ch. Dig. by Waterman, tit. Debter & Creditor.

 In Van Renssellaet’s ex’rs v. Roberts, it was decided, that where one individually and jointly indebted with another, to the same creditor, makes a general payment, the creditor may apply it to the joint account, although he has given the parly who paid him, a receipt, in which the name of the other joint debtor was not mentioned. 5 Denio, 470.