BAIN, (UNITED STATES v.) See Case No. 14,496.

BAINBRIDGE, (UNITED STATES v.) See Case No. 14,497.

# Case No. 755.

### BAINBRIDGE et al. v. WILCOCKS.

[Baldw. 536.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1832.

BILLS AND NOTES — LEX LOCI — INTEREST — COMMENCEMENT—COMPOUND INTEREST BY CONTRACT —EFFECT OF WAR UPON INTEREST.

1. Where bills are accepted payable in London on a promise to provide funds to meet them, the contract is governed by the law of England. [Cited in Grant v. Healey, Case No. 5,696; Cook v. Moffat, 5 How. (46 U. S.) 315.]

2. An account current received and not objected to in a reasonable time becomes a settled account, bearing interest from the time it is stated, and the balance is payable on demand. [See Baker v. Biddle, Case No. 764; White v. Macon, Id. 17,553; Hopkirk v. Page, Id. 6,697.]

3. An account made up of principal and interest becomes one principal debt when settled, the aggregate balance bearing interest.

4. Compound interest is not illegal, and may be recovered on an express promise, or one implied by law, as a part of the contract. [Cited in Hollinsworth v. City of Detroit, Case No. 6,613.]

5. If an account contains a charge of interest during a war, it is recoverable if there is a promise to pay the account after peace, or the account is in fact or law a settled account, from which the promise results by operation of law.

[6. Cited in Marye v. Strouse, 5 Fed. 491, to the point that an account stated cannot be opened because an item of interest which went into it could not have been recovered by suit, provided such item is not illegal.]

[At law. Action by Bainbridge & Co. against Wilcocks.]

The plaintiffs were bankers and commission merchants residing in London, the defendant a merchant residing in Philadelphia;

---

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

this suit was brought to recover a balance of an account, principally for bills accepted by plaintiffs at the request of defendant, or drawn by him, on his promise to make provision for them at maturity. The money was paid before and in 1810, and charged in account; the defendant left the United States in June 1811, and did not return till 1825. On the 25th of June 1811, he wrote to the plaintiffs that he appointed William Waln of Philadelphia his agent in his commercial transactions, and desired them to take his directions, the defendant being about to go to South America and Canton. In September 1811 the plaintiffs sent to Mr. Waln their account current with the defendant, exhibiting a balance due by him of 300 pounds. In March 1813 they sent another account to him, balance 1500 pounds, in March 1815 another, balance 1660 pounds, in March 1817 another, balance 1830 pounds, which were received by Mr. Waln in due time; a copy of the last account was also delivered to the defendant in Canton in the same year.

These accounts were made up of the items of charge and credit, beginning with the old balance, on which interest was charged till the making up of the new account; a balance was then struck and carried to the new account. The three last accounts were made up of the balances of the former accounts, with interest added; the effect of which was, that the aggregate balance of principal and interest in the last account, became principal in the next, with interest computed upon it. In the last accounts, interest was charged during the late war with England, letters from the plaintiffs to the defendant at Canton, complaining of the non payment of the balance were sent in 1817, 1819, 1823, which were received, but were not replied to till 1824, when defendant refused payment, alleging that he had paid Mr. Waln, to whom the plaintiffs had charged the account on his guarantee made in 1810. Mr. Waln continued to be the agent of defendant till 1819, and appears to have kept up a regular correspondence with him, in which reference was made by both, to the accounts of the plaintiffs; there were large accounts between them and Mr. Waln, and Mr. Waln and the defendants, which were given in evidence at the trial, together with a great mass of correspondence. It was alleged by the defendant, that he had objected to the account in Canton when it was presented to him in the winters of 1817, 1818, but the evidence was contradictory. Much time of the trial was occupied on the allegation of payment to Mr. Waln by defendant, of the balance claimed by plaintiffs, who had at one time charged it to him, but no satisfactory defence was made out on that ground; there was also some controversy as to some of the items of the account, and some additional credits claimed. No questions of law arose at the trial except on the charge of compound interest, and interest during the late war, which were objected to by the defendant's counsel; these were the principal questions in the cause. The trial occupied eight days, principally on matters of fact. [Verdict and judgment for plaintiffs.]

Chauncey and Binney, for plaintiffs.
C. J. and J. R. Ingersoll, for defendants.

Before BALDWIN, Circuit Justice, and HOPKINSON, District judge.

BALDWIN, Circuit Justice, (charging the jury.) The account between the parties consists of advances made in London by the plaintiffs, who resided there, to the defendant residing here, and payments made on account by the latter in London. The whole course of the transactions and correspondence between them shows, that the contract was to be performed in London; the rights and obligations of the parties, the rate of interest, and the rules for its computation, must therefore be governed by the law of England; the remedies on the contract depend on the law of the forum. The relation between the parties is that of agent, factor and depository on the part of the plaintiffs, and the defendant as their principal; their obligation is to account for the effects which came to their hands, his is to reimburse them for advances made, and responsibilities incurred at his request by a letter or a bill drawn on them. The contract between them is not one implied by a loan, but a special contract of indemnity, arising from the relation between them, governed by the law and usage of merchants, which makes it the duty of a person who draws bills on another without funds, to place them in the hands of the acceptor before the bill is due. Though the acceptor becomes the principal debtor to the holder of the bill, yet he is considered as the surety of the drawer, entitled to full indemnity, if funds are not provided in time; the factor or agent who has accepted on the faith of such contract, must be put in the same situation as if it had been complied with punctually. Interest is deemed to be a compensation for not paying money when due; the law of England as to the payment of interest is well settled.

On a note payable at a particular day, with interest, it is payable from the date, (5 Ves. 803; Coop. 29; 2 Mass. 568; 8 Mass. 221;) if interest is not mentioned, then it runs only after the day of payment, (2 Burrows, 1081;) if goods are sold payable at a certain day by a note or bill, if not given, the account bears interest, as if the note or bill had been given, for the obligation to pay is equal, (13 East, 98; 3 Taunt. 157; 2 Camp. 272, 280; 17 Ves. 278.) Any instrument of writing by which money is to be paid on a day certain, bears interest thereafter; not as damages, but as part of the contract. 3 Brown, Ch. 439; 3 Ves. 133, 134. The balance of an account properly stated, bears interest from the

time of liquidation till the principal is paid, though the debt, from its nature, did not bear interest. 2 Ves. Sr. 365; 2 W. Bl. 761; 3 Wils. 206; 2 Atk. 211. It will be computed on all notes, bills, contracts or debts, which on their face, or the nature of the contract, carry interest, (2 Ves. Jr. 300,) from the day when payable, on money lent, (Dickens, 307, 308; Bunb. 119;) if there is no time of payment, or if payable on demand, then after demand made, (1 Ves. Jr. 63;) on an overdraft on a banker, though a note is taken for it payable on demand, the interest is due from the usage and course of dealing between banker and customer, and the contract implied therefrom, (2 Ves. Jr. 302;) so on an advance of money by an agent in transacting the mercantile concerns of his principal, (3 Camp. 466, 467.) It will be allowed on an account current between merchants, where one has laid out a gross sum for another. Ridgway's Case, Cas. t. Hardw. 285; 1 H. Bl. 305. So on an award to pay the sum due on a balance of accounts on a certain day, (3 Camp. 467;) or on award of damages assessed pursuant to a statute, (1 Maule & S. 173, 174;) on an account stated by a master in chancery, (1 P. Wms. 480, 653; 1 Atk. 244.) These are the rules which prevail at law, as well as in equity, except in cases of bankruptcy; in such cases as the commissioners cannot award damages, the interest is allowed only in cases where it is due by contract, not where it is given by way of damages merely. 1 Atk. 75, 80, 151, 244; 3 Brown, Ch. 436, 439, 504, 508; 2 Ves. Jr. 295; 1 Rose, 317, 400. Where the course of trade between two countries has been settled to allow interest in certain cases, it is evidence of a contract to pay it according to such usage, (Doug. 361,) as the tacit law of the contract presumed to be agreed on by the parties, (3 Caines, 234, 243.)

Though an account does not bear interest a priori, yet the party receiving the account with interest charged according to usage or custom, it is evidence of an original agreement to pay it; so if the parties have settled an account according to such usage. 3 Brown, Ch. 439, 508; 3 Wash. 352, 402, [Barclay v. Kennedy, Case No. 976, and Denniston v. Imbrie, Id. 3,802.] In all such cases, the interest accruing from the time when an account is liquidated by the parties, when it is settled or liquidated by presumption of law from the conduct of the parties, or their implied agreement, by an award, a report of auditors or a master, an inquest or a jury, becomes as much a part of the debt due by the contract, as the original sum out of which it arose. 2 Burrows, 1088.

To make an account a stated, settled, or liquidated one, it need not be signed by the parties, it is enough that it shows a balance, or that there is none. 2 Atk. 251, 399. If one merchant sends an account to another in a foreign country, and he keeps it by him any length of time, as two years, without objection, the rule of courts and merchants is, that it is understood as a stated account. 2 Ves. Sr. 239; 2 Atk. 251; S. P., 15 Johns. 409, 424. Where the parties live in England, it has been held that not objecting to the account by the second or third post is an allowance of it. 2 Vern. 276; S. P., 1 P. Wms. 653.

The time within which an account shall be taken as a stated one, unless objected to, cannot be definitely fixed; it depends on the circumstances of the case, whether an acquiescence or a presumed agreement to the correctness of the account exists. If it does, and the party does not account for his silence, the account is considered as settled to his satisfaction, and the party claiming the balance is not bound to prove the items of his account. The party charged may show errors and omissions apparent in the account, but the burthen of showing them is on him who receives and keeps the account without objection, and the errors must be specified; they will not be corrected on doubtful or only probable testimony, but must be palpable, and not to be misunderstood, the party complaining can only surcharge and falsify, but cannot open the account generally, unless there has been fraud practiced upon him. 2 Atk. 119; 9 Ves. 266; 1 Ch. Cas. 299; 1 Vern. 180; 2 Brown, Ch. 62. It is the law of this country. [Freeland v. Heron,] 7 Cranch, [11 U. S.] 151. And a settled account is not opened, by being introduced into a second one. [Chappedelaine v. Dechenaux,] 4 Cranch, [8 U. S.] 309. These rules apply to all stated or settled accounts which bear interest from the time of settlement, unless some time for payment is stated, although part of the balance is for interest. Where regular accounts are settled from time to time, interest on interest is allowed. 3 Brown, Ch. 440. Where an account of moneys paid for insurances, and on other transactions between agent and principal, had been rendered annually, and interest charged at the close of every year on the balance, and the interest of each preceding year added to the principal, and no objection was made when the accounts had been rendered, until the expiration of ten years from the first account, the interest so charged was allowed. 3 Camp. 466, 467. Where bankers furnish an annual account without objection, an agreement shall be presumed that the balance of principal and interest shall bear interest. 1 Ball & B. 428. Accounts between merchants may be settled every half year, on the principle of compound interest. 9 Ves. 223, 224. It may be allowed where there is a contract implied, or it is the usage of trade, (2 Ves. Jr. 16, 17, 20, 21; vide a very able opinion of the late Judge T. Smith, 4 Yeates, 224,) or accounts transmitted annually, (2 Ves. Jr. 20, semb.) It is not illegal. 1 Ves. Jr. 99. Compound interest cannot be a priori, but is just after the debt is due. 9 Ves. 224. When it is the custom of a place and the

practice of the parties, to strike a balance every quarter, and render the account, it brings it to the case of a fresh agreement, at the beginning of every quarter, to lend the sum then due, which is not illegal. 2 Anstr. 496. Acquiescence in an account rendered, is not, per se, an agreement to it, but it is evidence from which it may be inferred, that the party who receives the account, without objection, thereby agrees to continue this course of dealing, and to retain the balance in his hands rather than to pay it. It is a tacit assent to the terms demanded by the creditor on the face of the account rendered, which is direct notice' of his understanding of their agreement; if the debtor is not content, he is bound by every principle of good faith to give notice of his dissent. The balance due is the capital of the creditor, which he leaves in the debtor's hands on paying interest; if it is not recoverable, his capital consists in a dry, barren balance, while his debtor uses it to a profit. The law does not impose such hardship on an ordinary merchant who makes a profit by his dealing, still less on a factor who receives only commissions and interest on his advances; especially in a case like the present. No contract can be more obligatory in justice or mercantile faith, than one by letter promising to provide funds to meet an acceptance by a friend and agent; or an implied one more sacred, than what the law infers from drawing a bill without funds, and its acceptance for the accommodation of the drawer. Nor can there be a case where there can be less ground for complaint, than one where, after such a contract has been violated, the creditor strikes a balance of principal and interest only once in two years, as in the one before you; and if the law will presume an agreement from silence in any cases, it is in this, where accounts had been rendered at intervals of two years without an objection, till the expiration of thirteen years from striking the first balance.

It has been objected that the defendant was in Canton when the accounts were rendered. But it is a conclusive answer to this objection, that Mr. Waln was his agent, so notified to the plaintiffs, who were directed to correspond with him as such; the accounts were received by Mr. Waln, between whom and the defendant a constant correspondence was kept up. Notice to the agent was notice to the principal, it was the agent's duty to communicate the accounts, and from the evidence there can be no doubt of the fact that they were so communicated and received, but if they were not received in fact by the defendant the law will presume it in this case. We instruct you therefore, as matter of law, that the accounts which have been rendered by the plaintiffs, and received by Mr. Waln or the defendant, are to be considered as stated or settled accounts, and as liquidated by the parties; as fully so as if they had been signed by both. The balance struck is a debt bearing interest, as a matter of contract implied by the law, and the balance is considered as one debt, without regard to the items which compose it; the aggregate of principal and interest, due on the old account, is carried to the new, imparting a promise to pay on demand, with interest from its date.

A promise or agreement implied by law, is as binding as if made by the party, the legal presumption is in the place of proof by witnesses; if the evidence is in writing, or the facts are admitted, the law declares what is the contract which results from them; so if a jury find the facts specially, the legal conclusion is a matter of law. If the facts are contested and the evidence doubtful, the jury will decide whether there was a promise express or implied to pay interest; but if they are satisfied that there was such promise in fact, or that such facts existed as are the foundation for the legal presumption of a promise or agreement to pay it; then interest follows as a matter of law. But though not so satisfied that there was an express or implied contract for the payment of interest, the jury may find it as damages for the non payment of the principal. In this case there is no fact in controversy which can affect the question of interest, the account being a settled one, the law raises the promise to pay interest on the balance stated in the last account rendered, as a matter of contract, which you will find accordingly. This implied agreement, applies as well to the interest on the account during the late war, as to what accrued before or after; the promise which the law raises to pay the whole account, carries with it the war interest, though it may not have been recoverable had it been objected to in time, there is no law which makes such promise illegal, or which can prevent the plaintiff from recovering it on an express or implied promise after peace. Our opinion therefore is, that in point of law the plaintiffs are entitled to interest as stated in their account.

The jury found for the plaintiffs with only simple interest, and as no motion was made for a new trial, judgment was rendered on the verdict. Vide York and Sheepshanks v. Wistar, [Case No. 18,141.]