Parker, J.
Tapscott, the complainant in the court below, had a clear right to be substituted- to all the remedies of the Bondurants, the obligees in the bonds, and for this reason, as well as because the remedies against the partners on the original contract of hiring had been extinguished at law by Trimble’s having given a higher security (Williams v. Donaghe’s ex’or, 1 Rand. 300. Sale v. Dishman’s ex’ors, 3 Leigh 548.) he is entitled to come into a court of equity. This has scarcely been ques *427 tioned, and the only serious point raised is whether Weaver was liable to the Bondurants, who hired the slaves to Trimble, orto Tapscolt, his surety in the bonds.
I think that a partnership in the boating business between Weaver and Trimble is clearly established by the evidence, and indeed admitted in the answer of Weaver; and that this partnership existed when the slaves were hired, and for some time after. The slaves were hired by Trimble to be employed in the boating business, and were actually so employed during a portion of the time that the partnership continued. Breaver says, the partnership was dissolved about the last of the year 1825, or early in 1826 ; but there are several circumstances inducing me to fix the period of dissolution as late, at least, as April 1826. According to him, by the terms of the partnership, he was to furnish the boats and loading, and Trimble to superintend the business and furnish the hands; whilst the profits were to be equally divided. Taking his own statement, it is enough to fix his responsibility to third persons. A participation in the profits and losses made them general partners in that concern, and subjected each one to all the liabilities of such general partnership, whatever may have been the stipulations and arrangements inter sc.
The reason why the partner taking a part of the profits is liable to creditors, is this, that he takes part of the fund on which they rely for payment. A dormant partner, to whom a vendor gives no credit, and whose responsibility constituted no part of the consideration moving him to sell, is liable to the whole extent of engagement, in matters which, according to the usual course of dealing, have reference to the business transacted by the firm. Robinson v. Wilkinson, 3 Price 538. Saville v. Robertson, 4 T. R. 720.
There can be no doubt, that the hiring of hands to be employed in the boating business had immediate re *428 ference to the nature of the dealings between Trimble and Weaver.. The trade in which they were engaged could not be carried on without hands, any more than without boats.
It made no difference, that Weaver gave no express authority to Trimble to hire. If he had been dealing in matters without the scope of the partnership, that circumstance would have been material; but not in contracts relating to the partnership. Gow on Partnership 67.
Nor was it more material, if Trimble hired on his own account, without expressly naming the partnership; or that Tapscott became his surety in ignorance of its existence. How these facts were, does not clearly appear. The probability is, that as the partnership was one of some notoriety, Trimble, when he went to Buckingham to hire hands, and asked strangers to become bis sureties, would speak of the business in which he was concerned, and refer the persons with whom he was dealing to the ultimate responsibility of the firm. But it is not necessary to establish that fact. If Tapscott was ignorant of Weaver’s being a partner, it brings this case within the influence of those upon secret partnerships. Gow 176. If he knew it, but dealt with Trimble alone, without intending to release the partnership, it must be governed by the cases of Bond v. Gibson & Jephson, 1 Camp. 185. and Gouthwaite v. Duckworth, 12 East 421.
It is only, I think, in cases where a separate credit is clearly given to one of the partners, to the exclusion of the rest, that the latter are absolved. This^bservation will explain the cases of Emly v. Lye, 15 East 7. and Bevan v. Lewis, 1 Simons 376. 2 Cond. Eng. Ch. Rep. 189. cited by the appellant’s counsel. In both of them, the partnership was known to the creditors, and the circumstances shew that they looked only to the individual partner with whom they dealt, and noj;- at all to the others. These cases, properly understood, do not *429 controvert the principle, that in purchases or bargains relating to the partnership, the act of one is considered the act of all, and that each may contract as if he were the authorized agent of the rest, and bind all by dealings within the scope and nature of their business. Gow 71. Willet v. Chambers, Cowp. 814. Walden v. Sherburne, 15 Johns. 422.
When one deals with a partner in matters relating to the partnership business, it ought to be inferred that he deals on the credit of the partnership, unless the circumstances prove, that though apprized of the partnership, he meant to give individual credit. If would he hard to hold him bound to prove, that he knew of the partnership, and dealt on its credit. One of a firm dealing in produce goes into the country, and purchases from the farmer, without- naming his partners; or he gets another to become his surety for the purchase money. Is the vendor or surety bound to prove that he knew of the partnership, and dealt on its credit ? The presumption is in the affirmative; and to discharge the firm, it ought to appear clearly that he gave credit to the individual alone, and intended to absolve the other partners. See the observation of chief baron Macdonald, in Barton v. Hanson, 2 Camp. 99.
So far from this appearing in the case under consideration, I am persuaded that Tapscott never intended to become the surety of Trimble alone, in exclusion of his partner, and that his delay in applying to the latter proceeded only from his doubts about his legal rights, or the difficulty of procuring evidence to prove the partnership, now so clearly established.
I am therefore for affirming the decree.
Cabell, J.
It is sufficiently manifest, even from the answer of Weaver, that a partnership existed between him and Trimble, in the boating business, at the time when the slaves in the bill mentioned were hired by *430 Trimble, ánd that the profits of the business were to be equally shared by the parties. It is also manifest from the testimony, that the slaves were hired for the partnership, and were applied to the uses thereof. Under these circumstances, it is perfectly clear that Weaver was equally liable with Trimble, even if Tapscott, at the time of the contract, were ignorant of the fact that Weaver was a partner. And if the fact of the partnership were known to Tapscott, Weaver is a fortiori liable; unless, indeed, it can be shewn that Tapscott, with this knowledge, contracted on the individual credit of Trimble, in exclusion of that of Weaver. Nothing of the kind is attempted to be proved, and it cannot be presumed without proof. Weaver, therefore, was clearly liable on the hiring; and the cases of Sale v. Dishman's ex'ors, 3 Leigh 548. and M'Cullough et al. v. Sommerville, not yet reported,* shew that this obligation was not extinguished by the execution of a bond by his partner.
I am therefore of opinion to affirm the decree.

 This case has been since reported in 8 Leigh, p. 415.