No. 56.—JOHN R. ANDERSON and others, plaintiffs in error *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] The Act of the Legislature of 1841 repealed the charter of the Bank of Darien, and transferred its assets to the Central Bank. John R. Anderson, Esq. was appointed by the Central Bank an agent to collect these assets, and gave bond. *Held that this bond was correctly made payable to the Governor of the State of Georgia.*

[2.] An agent who admits money in his hands belonging to his principal, is liable for interest thereon from the time he received it.

[3.] He who has fraudulently received, *or* wrongfully detains the money of another, is chargeable with interest thereon from the time he received it.

[4.] In order for a *demand* to be *liquidated*, it is not necessary that it should be in writing.

Debt on Bond. From Baldwin Superior Court. Tried before Judge MERRIWETHER. March Term, 1847.

For the facts of the case, and the points made, see the opinion delivered by the Supreme Court.

HARDEMAN, CONE, and HARRIS & DAY, for the plaintiffs in error, contended —

*First.* That there is no proper obligee to the bond; that it should have been made payable to the Central Bank, and not to the Governor. *Act of* 1841, *p.* 22.

Second. That the Court below erred in charging the jury that the plaintiffs in error were liable for interest from the time of the reception of the money by J. R. Anderson. 1 *John. R.* 315; *Peters C. C. R.* 172, 221, 224; 2 *Penn. R.* 652; 1 *A. K. Marshall R.* 576; 2 *Blackf. R.* 312; 7 *Halst. R.* 316; *Cox R.* 242; 1 *Call R.* 194; 2 *Dallas R.* 182.

*By the Court*—NISBET, J. delivering the opinion.

This was an action of debt brought in the name of the Governor of the State of Georgia, against John R. Anderson and his securities, upon a bond given by him as agent of the Central Bank, to take charge of and to collect the effects of the Bank of Darien. The bond is made payable to the Governor. The obligations as expressed in the bond are, "to take charge of the assets, books and papers of the Bank of Darien, and to perform such duties in regard to them as may be required by the board of directors of the Central Bank." It is conditioned for the faithful performance of "the duties required of him in virtue of his office as *clerk and book keeper*, according to law and the trust reposed in him." The usual breaches are assigned. Upon the trial the defendant objected to the bond going in evidence, because it was void in this, *that it was made payable to the Governor of the State, when according to law, it ought to have been made payable to the Bank of Darien;* which objection was overruled, and the overruling of which is relied upon before this Court as error. To a proper understanding of this exception, take the following facts. The Bank of [1.] Darien being in a dilapidated condition and the State of Georgia being a stockholder to a large amount, the legislature in 1841, passed an act repealing the act incorporating that institution and all acts amendatory of that charter, "except (to use the language of the repealing act,) *as hereinafter excepted.*" The Central Bank was authorised and required to provide forthwith for winding up the affairs of the Darien Bank; to collect in the assets and pay the debts and to pay the balance of the assets if any, to those entitled to them. To do which things the Central Bank was clothed with authority to prosecute suits in the name of the Darien Bank, to defend all suits brought against it, and to use all powers conferred upon that corporation, necessary to the ends proposed. The debtors of the Darien Bank were permitted to renew and run their notes in the Central Bank, upon the terms allowed the debt-

ors of the latter Bank upon accommodation notes. The directors of the Darien Bank elected by the State were reduced to four, and those elected by the stockholders to one, and the former were directed to facilitate the intents of the legislature, by turning over the whole of the assets of the Darien Bank to the directors of the Central Bank; and service of suits brought against the Darien Bank, was directed to be made on the president of the Central Bank. Such are the principal provisions of the Act of 1841. In pursuance of which, it appears from the record, that the assets of the Darien Bank were turned over, and the defendant below, John R. Anderson, was appointed by the Central Bank an agent to take charge of and collect them; and as such gave the bond upon which the suit was brought. It is contended by counsel for the plaintiff in error, that the charter of the Darien Bank was not repealed by the Act of 1841; that the persons beneficially interested in the bond, are the stockholders, and therefore the bond ought to have been made payable to the Darien Bank. In support of this proposition it is urged that the State has no other or better rights in the Darien Bank, than a private stockholder; that when a state becomes jointly interested with citizens in a corporation, her sovereign character is lost, so far as concerns that corporation. We recognise the latter proposition, also the proposition first stated by the counsel, to wit, that the bond ought to have been made payable to the Darien Bank, *if its charter is not repealed.* The exception we think, depends upon the question, whether that charter is or not repealed by the Act of 1841; and for the purpose of determining it, I have recited the principal provisions of that act. Our construction of the Act of 1841 is, that it repeals the charter of the Darien Bank, *except so far as to authorise the institution of suits in its name.* It is divested of its franchises, denuded of its powers, which are devolved upon the Central Bank, and its assets are cast into the hands of the Central Bank; all its unsettled business is to be conducted by the Central Bank, this corporation being clothed with power to pay its debts and wind up its affairs finally. For these purposes the Central Bank is created the agent, and becomes a trustee, for the creditors and stockholders of the Darien Bank. She is at the same time the fiscal agent of the State. In this twofold character she appoints Mr. Anderson her sub-agent to aid in the execution of her trust. By this appointment he becomes an officer, not of the Darien Bank, but of the Central Bank. To whom then is his bond to be made payable? This question is

settled, aside from any other view of the subject, by the charter of the Central Bank, which directs the bonds of the officers of the Central Bank to be made payable to the Governor. *Hotchkiss*, 220, 221, 214.

From the record it appears that Col. Anderson made a re- [2.] turn to the Central Bank in 1844, in which a balance of collections made upon the assets of the Darien Bank, seems to be admitted to be in his hands. This balance, with interest from the date of that return, make up the finding of the jury against him. The record discloses no mutuality of accounts, no claim of any kind on his part against the Central Bank. He was in fact acting under a salary. The evidence amounts to an acknowledgment that he held in his hands, as agent of the Central Bank, a balance of collections, made out of the assets of the Darien Bank. The Court below instructed the jury " *that, under the facts in the case, they should allow interest to the plaintiff from the time of the receipt of the money by Anderson.*" I have, for reasons that will hereafter appear, recited the opinion of the presiding judge, *literally*, as it is written in the bill of exceptions. The two additional errors of which the plaintiff in error complains, grew out of this charge. And first, it is claimed that the Court erred in instructing the jury *that the defendant in error was entitled to interest on the money received by the plaintiff in error, from the time it was received*, because this is not such a liquidated demand as, according to law, bears interest. Second, in this, that the Court in its charge instructed the jury *that, according to the facts in the case, they should find interest for the plaintiff;* thus usurping the province of the jury, by pronouncing a binding opinion upon the facts of the case. Other points were made in the assignment, but waived upon the argument.

Whether Anderson is liable for interest on this money, may depend upon the character in which he holds it. There is no question about the liability of executors, administrators, guardians, and other trustees, to pay interest upon trust funds in their hands, even before the *cestui que trust* is legally entitled to demand them; much more, [3.] therefore, shall such funds bear interest when improperly withheld from those entitled to receive them. The same doctrine applies to agents. " Thus, (says Story,) if an agent improperly withholds the money of his principal, he is made liable for the ordinary interest of the country where it ought to be paid." *Story on Agency*, 215; *Short* vs. *Skipwith*, 1 *Brock. Cir. R.* 103, 104 ; 2 *Kent*, 630, *note*.

He was the agent of the Central Bank, his duty was to pay to that

Bank all moneys collected by him as such, within a reasonable time; the money in this case was *improperly withheld.* If it was his duty to pay it over at once, and he shows no excuse or reason why it was not, the inference of the law is, that the money was improperly withheld. And here we might safely rest this question, but we think it expedient to inquire further, whether this is such a *liquidated demand* as under our statute and the general law bears interest.

[4.] The consideration of this question. was brought before this Court in Nisbet *vs.* Lawson. Nisbet, an attorney, having collected money and paid it over to the person claiming it, and who he supposed, but erroneously, entitled to receive it, was sued by the true owner, and by this Court held liable to pay, with interest from the time demand was made. In the opinion delivered in that case, the statute of Georgia, and also the general law, came under review of the Court. *The* 28*th section of the Judiciary act of* 1799 is in the following words: " No verdict shall be received on any *unliquidated demand,* where the jury have increased their verdict on account of interest, nor shall interest be given on any *open account* in the nature of damages." *Prince,* 427. In relation to this statute, this Court, in *Nisbet* vs. *Lawson,* held this language : " Are all demands *open accounts* and *unliquidated,* unless evidenced in writing ? *We hold not.* We understand by liquidation, an amount certain and fixed, either by *the act* and agreement of the parties, or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing ; and that the term does not necessarily refer to a *writing :* an *open account* is the reverse of this. And this definition is warranted not only by the most approved lexicons, and by *common* as well as *legal* parlance, but imperiously demanded by the principles of justice." 1 *Kelly R.* 287. This opinion is sustained by authority. By all fair construction the Legislature, in the use of the terms *unliquidated and open accounts,* must have had reference to their legal import. The act itself remits the courts to the law of force at the time of its passage, for a determination of what are *unliquidated* demands and *open accounts.* If it was the intention of the Legislature to say, that no demand is liquidated but that which is reduced to writing, and that all accounts are open which are not so reduced, the first suggestion of common sense, as well as the first impulse of legal learning, would have constrained a simple declaration to that effect. The manner in which these terms are used in the act demonstrates that the Legislature, by *open accounts,* meant

*unliquidated* demands, and *vice versa*.  Now I think it is well, even incontrovertibly, established by authority, that debts *existing* in account, not reduced to writing, are *liquidated*.  I do not, of course, mean that all debts resting in account are liquidated.  Thus in cases cited from Burrow and Vesey in *Blaney* vs. *Hendrick*, 3 *Wils.* 205, an account stated between merchant and merchant, is said to be *liquidated*.  Mr. Story commenting upon this head of contracts says, " a contract to pay interest is implied whenever there is a liquidated claim, or account of which there has been a demand or notice " — making *an account* of which there has been demand and notice, synonymous with a *liquidated claim*.  *Story on Con.* 432. The same writer further says, "the demand of payment of an unsettled claim, being equivalent to the rendering of an account, entitles the party making it to interest from the time of the demand and *liquidates* it if it were before unliquidated."  *Story on Con.* 433.  Again, what is an open account is shown in the following quotation from Story: "No interest is allowed on *an open and running account*, but as soon as an account is stated and rendered to the debtor, and no objection is made thereto by him, interest begins to run."  *Story Con.* 432.  By which I understand the writer to say, that when an account is *stated and rendered* and no objection made to it, it is no longer an *open and running* account, it is liquidated.  So also in *Walden* vs. *Sherburne*, 15 *John.* 409, where there were mutual accounts and a balance ascertained by the parties, the account was said to be *liquidated*.  Without labouring this point further, we may assume, that *open accounts* are such as are not *liquidated*, for example where there are mutual accounts still running and no balance struck; where the balance is constantly varying.  See 6 *John. R.* 45.  And that accounts are *liquidated*, in all cases in which, according to the books, interest has been allowed, for *liquidation* is the test of *interest*.  Certainly it may be safely assumed from the authorities cited, that reduction into writing is not necessary to constitute a liquidated demand.

It still remains, however, to be ascertained whether the account against Anderson is a *liquidated demand;* if it is, it bears interest, and the Court below committed no error, as to this matter, in its instructions to the jury.  It may be necessary to repeat, that Anderson, as agent, in his report to the Central Bank admits a balance in his hands.  He is the wrongful detainer of the money of his principal.  The question is, does such admission and such wrongful detainer charge him with interest? in other words, is it a liqui-

dation of the demand which the Central Bank held against him ? We think it is. I do not propose to traverse the whole field of British and American law upon the subject of interest; such a task is not made necessary by the case before us. I shall content myself with demonstrating, if possible, that where one wrongfully detains the money of another, particularly where such an one is in character of agent, he is liable for interest from the time he received it. Assuming as true, as I think we are authorized to do from the record, that the plaintiff in error held in his hands money which was by law, and we may add by the terms of his contract and the exigencies of his bond, payable to the Central Bank, and that he detained it wrongfully.

Interest is allowed as damages to the plaintiff for the detention of his debt, "*ratione detentionis debiti.*" This is the primary idea of interest. 2 *Salk.* 623; *Mr. Jefferson's letter to Mr. Hammond,* 1 *Am. State Pap.* 213. If the reason of allowing interest in all cases is found in the detention of the debt, the allowance of interest in this case is claimed by as clear and sound reason, as if there had been a written undertaking to pay interest after maturity of a note. The money of a principal is due from his agent, so soon after its collection as convenient opportunity occurs for its payment; in all cases, according to the books, after a demand it bears interest. In this case no demand is necessary to put the agent in default, because to *the principal* he *admits the money is in hand;* from the moment of that admission the money is due, and if detained, the *detention creates the reason of the interest.* In this case the jury found interest against the defendant only from the date of his return; they inferred from the testimony that he had not received it before that time; there was no evidence, in other words, that he had received it before. These remarks are to show that our judgment is founded on solid reason, as well as authority.

It was formerly held in England that interest should be allowed on all liquidated sums from the instant the principal became payable, and also *on money lent.* 2 *Black. R.* 761; 2 *Burrow* 1077; *Buller N. Prius,* 274; 1 *Hen. Black.* 305.

In *Blaney* vs. *Hendrick et al,* 3 *Wils.* 205, interest was allowed upon an account stated between merchants. The statement of the account is an admission by the debtor that there is a balance due. This case, I think, in principle, strongly sustains the case at this bar. In both cases a balance is admitted upon account; in both cases the account ceases to *be open,* the debt is liquidated. The case

of Blaney *vs.* Hendrick appears to have been decided upon two precisely analogous cases, one in Vesey and the other in Burrow, which I have not been able to find on account of the imperfectness of the reference.

In *Elkins* vs. *The East India Company*, 1 *Pr. Wms. R.* 396, the court says: " If a man has money by way of loan, he ought tö answer interest, but if he detains my money wrongfully, he ought *a fortiori*, to answer interest." This case was affirmed upon appeal to the House of Lords. It is true that in that case the money was *wrongfully acquired;* but why should that make a difference if the interest of a debt grows out of its *detention?* 2 *Bro. Parl. Cas.* 72. Candour however, constrains me to admit that the authorities in England are greatly in conflict as to the principles adjudicated in the above cases; the weight of authority is against the allowance of interest for money lent without a contract to that effect. See *Pinhorn* vs. *Tuckington*, 3 *Camp.* 467; *Calton* vs. *Brag*, 15 *East R.* 223; *Page* vs. *Newman*, 9 *Barn, & Cres.* 380; *De Haviland* vs. *Bowerbank*, 1 *Camp.* 50; 2 *Camp.* 427; *Walker* vs. *Constable*, 1 *Bos. & Pul.* 306.

In the midst of this conflict of opinion in England, we turn to the American decisions, confident that our way will be lit with a clearer light. In our own country we think it is conclusively settled, that where a defendant has *fraudulently acquired* or *wrongfully detained* the plaintiff's money, he is chargeable with interest from the time of his acquiring it. No matter what the state of the facts is, if the acquisition is fraudulent *or* the detention wrongful, he is liable for interest. It is scarcely necessary to say, that any detention is wrongful which is in violation of a contract as in the case now being decided, or which is in violation of another's legal right to have, demand, and receive the money. *Dodge* vs. *Perkins*, 9 *Pick.* 368; *Weeks* vs. *Hasty*, 13 *Mass. R.* 218; *Wood* vs. *Robins*, 11 *Mass. R.* 504; *The Commonwealth* vs. *Crevar*, 3 *Binn*, 121; *Gillet* vs. *Maynard*, 5 *John. R.* 88; *The People* vs. *Gasherrie*, 9 *John. R.* 71; *Greenly* vs. *Hopkins*, 10 *Wend.* 96; *Crawford* vs. *Willing*, 4 *Dall.* 289; *Slingerland* vs. *Swart*, 13 *John. R.* 256 ; *Brown* vs. *Campbell*, 1 *S. & R.* 179.

In *Wood* vs. *Robins*, 11 *Mass. R.* 506, after an able review of the English and American authorities, the Court says, " there may be cases where interest ought not to be allowed, as when the defendant has holden the money as a stakeholder ready to be paid to the party entitled ; *but where the defendant has fraudulently ob-*

tained the money, or wrongfully detained it, he must be charged with interest."

The case of the *People* vs. *Gasherrie*, 9 *John. R.* 71, is a very strong one, and in its facts almost identical with the case at this bar. The executors of the defendant were sued for divers sums of money which he had received as *Loan officer* for the county of Ulster. The only question made was whether he was liable for interest on the money received and detained. The court determined that he was.

The case of the *United States* vs. *Ormsby*, 3 *Wash. R.* 195, is. equally strong, and in its facts like our own case. That was an action on the case for the balance of an account settled at the Treasury department. The defendant under a special contract with the government to furnish certain supplies for the army, received advances of money; upon settling his accounts at the Treasury, a balance was found to be due from him; the action was for that balance, and the question was whether he was liable for interest on it. The court held that he was.

In South Carolina the courts have taken similar grounds. The leading case in that State is Goddard *vs*. Bulow. Mr. Cheves, who was then upon the bench, delivered a lucid and learned opinion, going fully into the question and accurately analyzing the authorities. He concludes with the following summary of cases in which a defendant is liable for interest: " My opinion is, that according to the law and practice of this State, interest is recoverable, either according to contract, or in damages, in all cases of certain or liquidated demands, from the time they are legally due and payable, and in all other cases in the nature of debt, where by custom or agreement, interest is payable, or in which the demand has been vexatiously or oppressively withheld. According to these principles, I think interest is due in this case; it is for the recovery of money belonging to the plaintiff which the defendant had no legal right to exact or retain, and is a demand certain in its nature"

I think the principles stated by the learned judge govern this case ; the demand is liquidated by the defendant's own admisssion that it is in hand, was legally due at the moment the admission was made, and was wrongfully detained. *Goddard* vs. *Bulow*, 1 *Nott & McCord*, 45 ; *Moore* ads. *The Treasurer*, 1 *Nott & McCord*, 214 ; 1 *Bailey*, 201. The case of *Moore* vs. *The Treasurer*, was on a sheriff's bond for money collected, and very much like this case.

This is an action on an officer's bond for money collected by him. In the former case the sheriff was held liable for interest from the time of *demand*, for, says the court, " there can be no violation of the obligation of the sheriff to pay over money, until it is withheld and until it is *demanded* of him.  The evidence of that fact is wanting, for it is certainly not the duty of the sheriff to traverse the world in pursuit of an individual whose money he may have collected." The admission to the plaintiff of his money being in hand, and Anderson being the collecting agent of *one* only, and that *one* a corporation of known and fixed location, takes his case without this reasoning as to *demand*.

Some of the cases which determine that a defendant holding money of another in his hands; go upon the principle that he has converted it to his own use.  It might be said that in this case there is no evidence that Anderson used this money to his own profit.  If *conversion of the fund* be necessary to render one liable for interest, (which it is not my purpose to admit,) then my reply is that the retention of the money is presumptive proof that he kept it for his own profit, and he should therefore pay interest; and it is so decided in South Carolina.  *Simpson* vs. *Feltz*, 1 *McCord Ch. R.* 220.

Under these views, founded, as we hope has been shown, upon authority, we believe the defendant is liable for interest.

Was the charge of the judge to the jury, to wit, " *that under the facts of this case they should allow interest to the plaintiff from the time of the receipt of the money by Anderson*," an invasion of the province of the jury ?  This charge is not hypothetical; nothing is left to be inquired into, or found by them touching the facts which relate to interest; the Court appears to assume the facts necessary to charge the defendant with interest, as proven, and *directs* the jury to find interest against them.  It is not *an opinion* on the facts as a man, or a judge, but an *instruction from the Court*.  The language is in no way equivocal; it is not *if you believe* the facts to be true, or *if you find that the defendant had in his hands and retains the plaintiff's money*, or *if you believe that his return to the Central Bank contains an admission of a balance due*, but it is direct, unequivocal and directory.  The jury must needs have understood it to be a binding direction to them, leaving them no discretion.  It was a clear departure from the proper power of the Court, and a palpable invasion of the rights of the jury and the party; for it is to be remarked, that to pass upon the facts is not the right of the jury alone, it is the right

of parties, that they should pass upon and find them, undirected and unbiased by the court. Under our constitution and laws, *facts* upon which verdicts are to be rendered and judgments entered, are not to be tried by one man, but twelve; the trial by jury is to be inviolate; the citizen is entitled to be tried by his peers and not by a judicial officer holding his commission from the State. It is in vain to say that the corrective power is still with the jury, that they are not compelled to find the facts as instructed by the court; a court that assumes to direct a jury upon the facts will hardly permit a verdict to stand when rendered contrary to that direction; nor can the jury well discriminate in all cases between a charge which does and one which does not invade their rights. On the one hand it is a dangerous power in the court; a power which an able and corrupt man might wield to most disastrous results to the people; and on the other a dangerous relief to the jury of their proper and necessary responsibility. Such is the reverence of our people for the courts of justice, and so profound is their respect to the law as administered to them by the court, that in my judgment the *opinion* merely on the facts, of an incumbent who has the confidence of the juries, would in nine cases in ten control their verdicts. It is necessary to keep the line between the powers and province of the court, and the jury, broadly and distinctly marked, and to arrest at once the least encroachment of the one upon the other. And whilst it it is necessary to hold the court aloof from the province of the jury, it is equally important to sustain the court in a firm and exclusive administration of the law in civil cases. No verdict should stand when rendered against the law of the case as pronounced by the courts. Whilst we hold it to be the right of the jury to pronounce upon the facts, we need scarcely say it is not only the right, but the *duty* of the court, in *every case*, plainly and independently to declare the law. Whilst I yield to the rule as to the power of the courts in instructing the jury on the facts, adopted already by this Court upon authority, yet I must say that I fear it goes too far. I do not think that the court ought to give an *opinion*, but that the judge's power should be limited to summing up the facts, and to inferences of the law deducible from them.

The rule settled by this Court in *Stell's* case, was announced in the following words, to wit: "The elementary writers and reported cases concur in maintaining, that if the judge dictates to the jury the verdict they shall render, or deliver his opinion to the jury on

a matter of fact, rather *as direction* than *mere opinion*, that the charge should be reviewed for misdirection." *See Stell, Guardian* vs. *Glass,* 1 *Kelly R.* 486, 487, *and the authorities there cited.* The judge in this case delivered his opinion as *matter of direction*, and the charge ought to be reviewed. We shall not however, acting upon a well established practice of this Court, send this case back, because holding as we do, that the defendant ought to pay interest it would do him no good. We must however, pronounce this a plain case of the invasion by the court of the province of the jury. In the *State* vs. *Casados,* 1 *Nott & McCord,* 98, Mr. Justice Cheves comments upon the power of the court over the facts in the following striking words: "It is the right and often the duty of the judge in the examination of questions of complicated facts, to give the aid of his discrimination, experience and judgment to the jury. If he *finally* and *distinctly* submits the question of fact to the jury as a matter within their peculiar province, and on which they have a right to determine for themselves, there can be no cause for this Court to interfere. There may be extreme cases which I hope will never exist, when a judge becoming insensible to the duties of his high station, may forget that impartiality which he is sworn to practice; a quality which graces whilst it strengthens the bench. If forgetting the duty of impartiality, a judge becomes a partizan, this Court must interfere, but it must not be on very light occasions."

In the *United States* vs. *Fourteen Packages, Gilpin D. C. R.* 257, it is held, "that it is no invasion of the privileges of the jury for the court to present to them its views of the nature, bearings, tendency and weight of the evidence."

I find no where this subject more satisfactorily discussed than by the Supreme Court in *McLanahan et al.* vs. *The Universal Insurance Company,* reported in 1 *Peters,* 182. I shall transcribe the views of Mr. Justice Story in extenso, because of their justness, because of the ability and purity of the man, and of the commanding authority of the court. The charge of the judge in this case was not more direct and unequivocal than Judge Merriwether's. It was "*that upon the whole evidence in the case, the plaintiffs are not entitled to recover, and the verdict of the jury ought to be for the defendants.*" Judge Merriwether instructs the jury, "*that under the facts in this case, they should allow interest to the plaintiff from the time of the receipt of the money by Anderson.*" The similarity in the two is very remarkable. The exception to the charge of

the court in tho case in 1 Peters was sustained, Mr. Justice Story among other things determining as follows: "It is doubtless within the province of the court in the exercise of its discretion, to sum up the facts in the case to the jury, and submit them with the inferences of law deducible therefrom to the free judgment of the jury ; *but care should be taken in all such cases to separate the law from the facts, and to leave the latter in unequivocal terms to the jury, as their true and peculiar province.* We do not understand however, that the present instruction was in fact, or was intended to be, merely in the nature of advice to the jury; it is couched in the most absolute terms, and imposed an obligation upon the jury to find a verdict for the defendant; it assumed there were no disputable facts or inferences proper for the consideration of the jury upon the merits, and that upon the unquestioned facts the plaintiffs had no legal right to recover." I concur in these just and plain principles beautifully expressed, and see no reason why the opinion of the learned justice, so strikingly alike are the two, may not apply as well to Judge Merriwether's charge as to that which he had under review.

Let the judgment of the Court below be affirmed.